**E. Clarke Balcom**, # 01195
cbalcom@clarkebalcomlaw.com
**Shannon D. Sims,** # 072029
sims@clarkebalcomlaw.com
**CLARKE BALCOM, P.C.**
1312 SW 16th Ave, 2nd Floor
Portland, OR 97201
Telephone (503) 224-5950
Fax (503) 467-4669
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **TRAVIS W. BLUE**, <br> Plaintiff, <br> v. <br> **COLLECT AMERICA, BRONSON and MIGLIACCIO , PENTAGROUP FINANCIAL,** corporations, **BONNIE MERVIS,** an individual, and **DOES ONE THROUGH TWENTY-FIVE,** <br> Defendants. | Case No.: Cv 09-1213-HU <br><br> **COMPLAINT** <br> Fair Debt Collection Practices Act; <br> Unlawful Debt Collection Practices Act; <br> Intentional Infliction of Emotional Distress <br><br> **DEMAND FOR JURY TRIAL** |

## I. INTRODUCTION

1.     This is an action for actual and statutory damages brought by Plaintiff, Travis W. Blue, consumer, against Defendants, Pentagroup Financial, Collect America, Bronson and Migliaccio, Bonnie Mervis and DOES 1-25, for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (hereinafter "FDCPA") and the Oregon Unlawful Debt Collection Practices Act, ORS § 649.639 *et seq*. (hereinafter "Oregon Act"), which prohibit debt collectors from engaging in abusive, deceptive, and unfair practices, and for intentional infliction of emotional distress.

Page 1 of 12 - COMPLAINT

## II.  JURISDICTION

2. Jurisdiction of this court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367. Venue in this District is proper in that Defendant transacts business in the State of Oregon, Plaintiff resides in the State of Oregon, and the conduct complained of occurred in the State of Oregon.

## III.  PARTIES

3. Plaintiff Travis W. Blue ("Mr. Blue") is a natural person residing in Portland, Oregon, County of Multnomah, and is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

4. Defendant, Collect America Commercial Services ("Collect America") is a Delaware corporation engaged in the business of collecting debts with its principal place of business located at 16011 College Blvd, Suite 101, Lenexa, KS 66219. Collect America can be served with process at CT Corp Systems, 388 State Street, Suite 420, Salem, Oregon 97301. Collect America is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6) because it regularly uses the mail and/or telephone in the collection of debts from consumers, and it was acting in this capacity as to the consumer debt it attempted to collect from Travis W. Blue.

5. Defendant, Pentagroup Financial ("Pentagroup") is a Texas corporation engaged in the business of collecting debts in this state with its principal place of business located at 5959 Corporate Drive, Suite 1400, Houston, Texas 77036. Pentagroup can be served with process at CT Corp Systems, 388 State Street, Suite 420, Salem, Oregon 97301. Pentagroup is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6) because it regularly uses the mail and/or telephone in the collection of debts from consumers, and it was acting in this capacity as to the consumer debt it attempted to collect from Travis W. Blue.

6.      Defendant, Bronson and Migliaccio ("Bronson") is a law firm engaged in the business of collecting debts in this state with its principal place of business located at 415 Lawrence Bell Drive, Williamsville, NY 14221. Bronson is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6) because it regularly uses the mail and/or telephone in the collection of debts from consumers, and it was acting in this capacity as to the consumer debt it attempted to collect from Travis W. Blue.

7.      Defendant, Bonnie Mervis is a natural person who was employed at all times relevant herein by Defendant Pentagroup as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

8.      Does 1-25 consist of natural persons who were employed at all times relevant herein by one or more of the corporate defendants as a collection agent and are "debt collectors" as that term is defined by 15 U.S.C. § 1692a(6), as well as other agents and owners of the above-referenced corporate defendants. Additional corporate defendants, who acted as "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6) may also be included. Plaintiff does not know the names and capacities of these individuals and corporations. As such, Plaintiff uses fictitious names and will seek leave of the court to amend this complaint to reflect the actual names once ascertained.

### IV.  FACTUAL ALLEGATIONS

9.      In the Spring of 2008, Plaintiff, Travis Blue, began receiving calls from Bronson and Migliaccio regarding an alleged debt. Defendant Bronson threatened to file a lawsuit against Mr. Blue, and demanded that he (Blue) contact friends and family for money to pay the debt. Several other, similar, abusive calls were received throughout the spring.

10. In June of 2008, the calls became much more frequent. On or about June 12, 2008, a man called from Defendant Bronson. He stated that unless immediate payment was received he would send the account to an attorney. Additionally, he threatened to garnish Plaintiff's wages. When Mr. Blue explained that he was not able to pay, the collector demanded that Mr. Blue contact friends and family for money. When Mr. Blue tried to explain that he didn't have any one he could turn to for this money Defendant Bronson derided him for having no one to go to. Mr. Blue hung up the phone, but the collector called back immediately and stated that he was recommending a lawsuit be filed. Intimidated by the idea of a lawsuit being filed and fearful of garnishment, Mr. Blue called back to Defendant Bronson and attempted to work out a payment plan. He was ridiculed for only being able to afford $20.00 per month. Defendant Bronson refused this offer. No payment plan was reached and suit was again threatened. One last call occurred on this same day threatening a lawsuit. There were no calls for approximately two months after this. Nor were any lawsuits filed or garnishments sought by Defendant Bronson.

11. Later in the summer, on or about August 12, 2008, Defendant Bronson began making calls again. Several days later another collector called from Defendant Bronson. She told Mr. Blue that if he set up a payment plan, then he could call in and cancel any payments he was unable to make. He was specifically told that he could cancel a pending payment up through the 30th of the month. Mr. Blue, who wanted to honor his obligation, gave Defendant Bronson the information needed for automatic withdrawals. Defendant Bronson then sent a letter confirming the receipt of postdated checks and stating the dates on which they would be deposited.

12. Later that same month, a collector from Defendant Bronson contacted Mr. Blue's father, Philip Gallagher. The collector stated that he was from a law firm regarding a debt owed by Travis Blue, and that if Mr. Blue did not immediately pay the debt, then a lawsuit would be filed.

Mr. Gallagher, who has terminal health problems, told the collector that Mr. Blue did not live there with him and was not reachable at his number. The call caused a great amount of stress to Mr. Gallagher.

13. In late August, per the payment agreement, a payment was withdrawn from Mr. Blue's account. Mr. Blue also received a notice of intent to take a payment for September.

14. In September a collector from Defendant Bronson called Mr. Gallagher again. When Mr. Gallagher asked how the collector got his number, the collector falsely claimed that Mr. Blue had given him the number as a reference. The debt collector told Mr. Gallagher that a law suit would be filed against Travis Blue, if the account was not paid right away, so he, Gallagher should pay the debt. Mr. Gallagher explained that he was not financially in a position to do so. This call also caused a great deal of stress to Mr. Gallagher.

15. On September 29, 2008, Mr. Blue called Defendant Bronson to cancel the payment for the next month, per the agreement he had with them. Mr. Blue had sustained a workplace injury and his hours had been cut back. He explained this to the collector and was told not to worry about it; no payment would be withdrawn. Plaintiff promised to call back as soon as he was working again to resume payments. Still nervous, Mr. Blue called Defendant Bronson a second time to ensure that the automatic payment was cancelled. He was reassured that it was taken care of and no payment would be withdrawn.

16. Several days later Mr. Blue discovered that a payment had been withdrawn by Defendant Bronson, despite the fact that he had cancelled payment per Defendant Bronson's instructions; this caused several items to bounce, resulting in overdraft fees and the account being closed.

17. Plaintiff immediately called Defendant Bronson and informed them that he had cancelled the payment, but that they had withdrawn funds from his account anyway, without authorization.

Page 5 of 12 - COMPLAINT

He then attempted to explain that as a result he now had no money for rent or food. The collector told Plaintiff that there was no record of his call and furthermore stated that he would never get his money back. He ridiculed Mr. Blue for the fact that he had no money to buy food, and then yelled at him. The collector also threatened to have Mr. Blue's wages garnished. The collector continued his abusive behavior claiming that Plaintiff was lying about his injury, that he was not being truthful, and that they (Defendant Bronson) "know where he lives and works and can have him served at any time." Mr. Blue attempted a second time to explain that he had no money for food or rent as a result of the unauthorized withdrawal, but the collector refused to listen and continued to harass with threats of garnishing wages and filing a lawsuit. As a result, Mr. Blue suffered a series of severe anxiety attacks.

18.    A collector from Defendant Bronson called again in mid-October and Mr. Blue informed him that he was considering bankruptcy. The collector then gave legal instruction advising that he would still have to pay the debt even if he filed for bankruptcy. Mr. Blue was surprised by this information, but had no reason to believe that it was not true.

19.    In mid November, Mr. Blue spoke to "Robert," who claimed to be a manager for Defendant Bronson. Mr. Blue explained that he had gotten injured, and so was working shorter hours and that was he was unable to make a payment. Robert told Plaintiff that he had a bad attitude. Robert became belligerent, yelled and threatened to turn the case over to an attorney for legal action. Plaintiff then enquired as to why Defendant Bronson had contacted his father, Phillip Gallagher. Robert denied that any calls had been placed to Plaintiff's father.

20.    No other calls were received until April 4, 2009, when Defendant Bonnie Mervis from Defendant Pentagroup contacted Mr. Blue's father, Phillip Gallagher. She stated that Pentagroup had been retained to collect a debt from Plaintiff. Mr. Gallagher told her that it was not his affair,

that he didn't wish to discuss it, and to please not call him again. Despite this, Ms.Mervis continued the conversation and insisted on leaving all of her contact information with him. After this call Plaintiff's father experienced difficulty breathing.

21. The following day Mervis called Mr. Gallagher again. However, this time she asked for Mrs. Blue. Gallagher explained that there was no Mrs. Blue, that Travis's mother's name was Gallagher, like his, but that she did not live there and was not available at his number. He refused to supply Mervis with contact information for Plaintiff's mother, Karen Gallagher. Nonetheless, Mervis did end up contacting Karen Gallagher that same day, and discussed the debt with her, as well.

22. In May 2009, Plaintiff was also contacted by Bonnie Mervis of Pentagroup. She informed him that she "wanted to help him" to avoid certain garnishment. She then advised Mr. Blue on the law, claiming that Oregon had the most relaxed garnishment laws in the United States. She also informed him that a judgment would be on his "permanent record" and that he would not be able to find a job if that happened. Mr. Blue then inquired as to the relationship between Pentagroup and Bronson. Mervis told him that "Bronson is a law firm that Pentagroup works with." Mr. Blue then requested verification of Pentagroup's authority to collect the debt. Finally, Mr. Blue asked her to stop calling his parents. He explained that his father, Mr. Gallagher was very ill and elderly, and barely able to make it to the phone when it rang, and that the calls had added a great deal of stress to an already deteriorating state of health. Mervis made it difficult for him to speak, interrupting him continually. She repeated over and over that she was just a nice person trying to help him out. Near the end of the conversation, Mervis used a pejorative term to describe Plaintiff and then hung up on him.

Page 7 of 12 - COMPLAINT

23. In early June 2009, Mr. Blue received a letter dated May 30, 2009 from Pentagroup demanding payment. On or about June 9, 2009, Mr. Blue called Bronson to inquire about Pentagroup. He was informed that the debt was transferred to Pentagroup and that "they" all work together. He was further informed that "if we scratch Pentagroup's back, they scratch ours."

24. In July of 2009, Pentagroup, through Mervis, contacted Plaintiff's father, Phillip Gallagher, yet again, despite being fully advised of his health issues. Mervis insisted that Gallagher call his son and warn him that he absolutely must contact her by the following Monday. Her pleas were sufficiently worrisome to cause Mr. Gallagher to call his son and pass on the warning from Bonnie Mervis. Upon learning of this call, Mr. Blue also became worried and anxious, particularly in regard to the health of his ailing father whom Pentagroup continued to harass regardless of requests by both Plaintiff and his father to cease contact.

25. Plaintiff then attempted to contact Mervis at Pentagroup and left her a message to not contact his father again, that the debt does not involve his father, that his father is ill and elderly, and the stress of the calls is contributing to his father's failing health.

26. Near the end of August, 2009, Mervis called Plaintiff to ridicule and chastise him. She ended the call with yet another threat to turn his account over to an attorney for suit and subsequent garnishment.

27. This continuing harassment of Mr. Blue, his father, and his mother, has severely damaged Plaintiff by causing him extreme embarrassment, humiliation, worry, agitation, emotional distress, and anguish.

## V. FIRST CLAIM FOR RELIEF

28.     Plaintiff repeats and realleges and incorporates by reference to the foregoing paragraphs.

29.     Defendants violated the FDCPA.  Defendants' violations include, but are not limited to, the following:

   a) Defendants and their representatives violated 15 U.S.C. 1692c(b) by contacting third parties about the alleged debt and discussing it with them;

   b) Defendants and their representatives violated 15 U.S.C. 1692e(3) by implying that the individual was an attorney by providing legal advice on the issue of Plaintiff's potential bankruptcy and advising on Oregon debt collection laws;

   c) Defendants and their representatives violated 15 U.S.C. 1692e(5) by threatening to take an action that cannot legally be taken or that is not intended to be taken by threatening to garnish Plaintiff's wages;

   d) Defendants and their representatives violated 15 U.S.C. 1692e(10) by using deceptive means in an effort to collect this debt by threatening to garnish Plaintiff's wages.

   e) Defendants and their representatives violated 15 U.S.C. 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff.

   f) Defendants and their representatives violated 15 U.S.C. 1692f(6) by threatening to take a non-judicial action to effect dispossession of property, where there is no present right or intention to take possession of the property, by threatening to garnish.

      g) Defendants and their representatives violated 15 U.S.C. 1692g by failing to provide notice of the alleged debt within five days of the initial communication.

      h) Defendants and their representatives violated 15 U.S.C.1692g by failing to validate an alleged debt within 30 days of receiving a dispute letter from Plaintiff.

30.    As a result of the foregoing violations of the FDCPA, Plaintiff suffered embarrassment, humiliation, worry, agitation, and emotional distress.  Defendants are liable to Plaintiff for a declaratory judgment that Defendants' conduct violated the FDCPA, actual damages, statutory damages, and costs and attorney's fees.

## VI. SECOND CLAIM FOR RELIEF

31.    Plaintiff repeats and realleges and incorporates by reference to the foregoing paragraphs.

32.    Defendants violated the Oregon UDCPA. Defendants' violations of the UDCPA include, but are not limited to, the following:

    a) Defendants and their representatives violated ORS § 646.639(2)(c) by threatening to garnish Plaintiff's wages without disclosing that prior court proceedings are required;

    b) Defendants and their representatives violated ORS § 646.639(2)(d) by communicating with Plaintiff in an abusive manner;

    c) Defendants and their representatives violated ORS § 646.639(2)(e) by communicating with Plaintiff and his family with the intent to harass;

    d) Defendants and their representatives violated ORS § 646.639(2)(k) by threatening to take an action which they as debt collectors in the regular course of business do not take.

33.    As a result of the foregoing violations of the Oregon UDCPA, Defendant is liable to Plaintiff for actual damages, statutory damages and costs and attorney's fees.

## VII. THIRD CLAIM FOR RELIEF

34.     Plaintiff repeats and realleges and incorporates by reference to the foregoing paragraphs.

35.     Defendants and their representatives intentionally inflicted emotional distress upon the Plaintiff.

36.     Defendants either desired to inflict such distress or were certain or substantially certain that such distress would result from the outrageous conduct in which Defendants engaged.

37.     Defendants through a continuing course of conduct inflicted severe emotional distress upon the Plaintiff.

38.     Despite repeated requests by the Plaintiff, Defendants continued to inflict emotional distress upon him. This outrageous conduct included repeatedly contacting Plaintiff and his family members, engaging in verbal abuse, and even going so far as to give false and unauthorized legal advice.

39.     As a result of Defendants' behavior, Plaintiff suffered intense mental reactions including humiliation, fright, depression, anxiety, desperation, embarrassment, worry, anger, and shame.

40.     Defendants engaged in this behavior individually, through representatives, or in both capacities.

41.     As such, each Defendant is liable to Plaintiff for damages resulting from intentional infliction of emotional distress.

    WHEREFORE, Plaintiff, Travis W. Blue, respectfully requests that judgment be entered against Defendants for the following:

        A.    Actual damages pursuant to 15 U.S.C. § 1692k;

        B.    Actual damages for intentional infliction of emotional distress;

    C.    Statutory damages of $1,000 pursuant to 15 U.S.C. § 1692k;

    D.    Statutory damages of $200.00 pursuant to ORS § 646.641(1);

    E.    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k and ORS § 646.641(2); and

    F.    For such other and further relief as the court may deem just and proper.

Respectfully submitted this ____ day of October 2009,

_____
Shannon D. Sims, OSB #072029
CLARKE BALCOM, P.C.
1312 SW 16th Ave, 2nd Floor
Portland, OR 97201
Telephone (503) 224-5950
Fax (503) 467-4669
**Of Attorneys for Plaintiff**

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs demand a trial by jury in this action.

_____
**Attorney for Plaintiff**